16 F.3d 418
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Librado MEDINA-MEDINA, Defendant-Appellant.
 No. 93-1279.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 16, 1994.
 
 ORDER AND JUDGMENT[1]
 Before SEYMOUR, Chief Judge, LOGAN and ANDERSON, Circuit Judges.
 
 
 1
 Defendant Librado Medina-Medina pleaded guilty to possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1), reserving the right to appeal the denial of his motion to suppress evidence obtained during a search of the yard where he was apprehended.
 
 
 2
 * Michael Riebau, an Immigration and Naturalization Service (INS) special agent, and two Drug Enforcement Administration (DEA) agents, Gregory Salazar and Ralph Villarruel, were seeking a fugitive, Emilio Meza-Perez. Having information that he might be at 1206 Croker Drive in Thornton, Colorado, they approached that residence and as they prepared to knock at the front door it slammed shut. Noticing activity inside, and thinking someone might be eluding them from the rear, two agents went to the back yard through a side passage. There they saw two individuals moving "rather quickly"[2] down a hill to a fence around the yard, where they appeared to be trying to get over the fence. II R. 6-7. Agent Riebau shouted to them in Spanish to stop and come back, and they did. He identified himself as an INS agent. In response to Riebau's questions both defendant and his companion admitted they were illegal aliens. Riebau immediately took them into custody.
 
 
 3
 The agents then obtained consent from a third person, the renter, Jesus Perez-Meza, to search the house. That search turned up no money or drugs, but did provide evidence that residents there were associated with the fugitive and other narcotics distributors. The agents then searched the back yard and found a gym bag next to the fence where the two individuals were when summoned by agent Riebau. The bag had no identification on it and did not appear to have been outside for long. The agents opened the bag; it contained $20,500 cash, cocaine, and clothing. Taking the bag inside the residence, an agent advised defendant of his rights, after which defendant admitted that the bag and its contents were his.
 
 
 4
 Defendant moved to suppress the contents of the bag, claiming that consent or a warrant was required to search it. The district court denied the motion after finding that the bag had been abandoned. This appeal followed defendant's conditional guilty plea.
 
 II
 
 5
 "In an appeal of the denial of a defendant's motion to suppress evidence, our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the Government." United States v. Morgan, 936 F.2d 1561, 1565 (10th Cir.1991) (quoting United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir.1990)), cert. denied, 112 S.Ct. 1190 (1992). "Ultimate determinations of reasonableness concerning Fourth Amendment issues and other questions of law, however, are reviewed de novo." Morgan, 936 F.2d at 1565-66. "A finding of abandonment of property is reviewed under the clearly erroneous standard." United States v. Trimble, 986 F.2d 394, 399 (10th Cir.), cert. denied, 113 S.Ct. 2943 (1993).
 
 
 6
 The warrantless seizure of abandoned property does not violate the Fourth Amendment. Morgan, 936 F.2d at 1570 (citing Abel v. United States, 362 U.S. 217, 241 (1960)); see also United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.) ("warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment"), cert. denied, 464 U.S. 859 (1983). "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." Jones, 707 F.2d at 1172. "Thus, determinations of abandonment are based on whether the individual has retained any reasonable expectation of privacy in the object." Morgan, 936 F.2d at 1570. "The existence of such an expectation is a question of intent requiring us to examine words spoken, actions taken, and other objective facts involved." Id.
 
 
 7
 In the instant case the district court found that the property had been abandoned. Defendant attempts to distinguish Morgan and Jones, our prior cases in which we affirmed district court denials of suppression motions in situations similar to the case at bar. The only factual distinction between the instant case and Morgan and Jones that merits comment is that here defendant claimed ownership when he learned the bag had been found and searched, but this fact does not dictate a result different from Morgan and Jones because the agents here searched the bag before defendant claimed it. "In order to determine whether a pre-search abandonment has occurred, the flow of information considered stops at the moment the police officer opened the suitcase." United States v. Rem, 984 F.2d 806, 811 (7th Cir.), cert. denied, 114 S.Ct. 300 (1993). The question is "whether [the defendant] relinquished the [bag] under circumstances which indicated to the police that he had no justified expectation of privacy in the contents of that [bag]." Id. at 811. The district court found that defendant left the bag in the yard in an open area, did not bring it with him when summoned to talk to the agent, and in doing so gave up his expectation of privacy in the contents. We cannot hold that the district court's finding of abandonment was clearly erroneous.
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 In closing argument, defendant's attorney asserted the law enforcement report by a DEA agent, presumably Agent Salazar, indicated the two men were standing by the fence when the agents first saw them. II R. 24. The district court judge's finding of abandonment did not appear to turn on whether the two men were standing or moving quickly. The judge stated that "what we know is that our witness, Agent Riebau, sees two men apparently leaving the premises, orders them back, they come back, and then there's the basis for arresting them...." II R. 27 (emphasis added). Our review of the record does not indicate that this factual finding was clearly erroneous